# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>SHERYL HENDERSON,<br><br>    Defendant. | CR 2:20-cr-28-2 |

## ORDER

Before the Court are Defendant Sheryl Henderson's Objections, dkt. no. 169, to the Magistrate Judge's Report and Recommendation dated May 12, 2021, dkt. no. 158.  The Magistrate Judge recommended the Court deny Defendant's motion to suppress.  Dkt. No. 158 at 1.  After an independent and de novo review of the entire record, the Court **CONCURS** with the Magistrate Judge's Report, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Defendant's Objections.

## BACKGROUND

Defendant has been indicted on one count of possession with intent to use five or more false identification documents, in violation of 18 U.S.C. § 1028(a)(3).  Dkt. No. 1.  These charges stem from a traffic stop and subsequent vehicle search performed by Georgia State Patrol Trooper Richard Sikes on March 6, 2019.  Dkt. No. 158 at 2.  Just before 3:30 PM that day, Defendant

Henderson was driving a four-door sedan with three passengers; they were headed southbound on a state highway where the speed limit was forty-five to fifty-five miles per hour. Id. Trooper Sikes was traveling in the opposite direction and saw Defendant drive past him at eighty to eighty-five miles per hour; he made a U-turn, turned on his lights and sirens, and began to pursue Defendant. Id. at 2-3. Once Trooper Sikes caught up with Defendant's vehicle, Defendant pulled over to the shoulder of the highway. Id. at 3. Trooper Sikes called in the car's tag number over the radio. Id. Trooper McCrary, a more junior trooper, heard the call and joined Trooper Sikes at the stop shortly thereafter. Id. at 3-4.

Trooper Sikes then exited his car and approached the rear of Defendant's vehicle. Id. at 4. Trooper Sikes directed Defendant to exit the car; Defendant began unbuckling her seatbelt and accidentally turned on her windshield wipers. Id. Trooper Sikes then told Defendant to exit the car again, after which Defendant exited the car and met Trooper Sikes by the rear of the car. Id. Defendant had her license in her hand when she got out of the car and immediately handed it to Trooper Sikes. Id. Trooper Sikes began asking Defendant questions, and Defendant spoke to him without hesitation. Id. at 4-5.

Trooper Sikes first asked Defendant where she was headed; she said she was going to Jacksonville, Florida. Id. at 5. Trooper

Sikes asked if she was late; she said no but acknowledged she was speeding and was not paying attention to the speed limit. Id. Trooper Sikes told Defendant how fast she was traveling, and then asked Defendant from where she was coming; Defendant told him Atlanta. Id. Trooper Sikes asked who owned the car, and Defendant told him it was a rental car in her name and the rental agreement was in the car's glove box. Id. Trooper Sikes then told Defendant he was going to grab the rental agreement paperwork "real quick." Id.

Trooper Sikes did not retrieve the rental agreement immediately and instead continued to ask questions of Defendant. Id. These questions included: the purpose of Defendant's travels; whether Defendant wore glasses or contacts; whether there was anything in the car he "need[ed] to know about," including guns, knives, weapons, drugs, or marijuana; the last time Defendant smoked marijuana; whether Defendant was prescribed or was taking any medications; Defendant's employment status; the identity of other passengers in the car; whether the other passengers were "straight" or if they had anything about which he needed to know; and the last time Defendant had alcohol. Id. at 6-7. Trooper Sikes also directed Defendant to open her eyes and look at him and to open her mouth and stick out her tongue to assess her sobriety; he testified he did not smell any alcohol on Defendant's breath or notice any indication of recent marijuana consumption. Id. at 6.

3

After this period of questioning, which lasted about two minutes and forty seconds, Trooper Sikes again told Defendant he was going to grab the rental agreement from the car. Id. at 7. He asked Defendant to sit on the hood of his patrol vehicle next to Trooper McCrary while he did so. Id. Trooper Sikes then approached the passenger's side of the car to retrieve the rental agreement; the passenger seated there handed the paperwork to Trooper Sikes. Id. Trooper Sikes testified that while he was retrieving the paperwork, he immediately recognized the smell of marijuana coming from inside the car. Id. at 8. Defendant does not dispute this fact. Id.

Trooper Sikes spoke with Defendant again, spoke with the other passengers, and eventually decided after consultation with Trooper McCrary that they had probable cause to search the car. Id. at 8-10. The troopers called over the radio to request a female officer and a drug dog, and they spoke with the passengers while waiting for the female officer and canine officer to arrive. Id. at 10-11. The search ultimately yielded forty-four false identification cards, a large sum of cash, and marijuana. Id. at 13.

## DISCUSSION

Defendant objects to the Magistrate Judge's recommendation that this Court deny her motion to suppress. Dkt. No. 169. The Magistrate Judge found that while Trooper Sikes violated Defendant's Fourth Amendment Rights by asking impermissible

4

questions which prolonged the traffic stop, the inevitable discovery exception to the exclusionary rule nonetheless permits admission of the evidence. Dkt. No. 158 at 35, 47.

Defendant argues the Court should decline to adopt the Magistrate Judge's conclusion for three reasons: first, Trooper Sikes did not "actively pursue" the traffic violation as is required for the inevitable discovery exception to apply; second, inevitable discovery requires "something more" than the inevitable discovery of contraband; and third, the Magistrate Judge's analysis of the exception's purpose would render every search constitutional, which cannot be. Dkt. No. 169 at 7. The Court addresses each of these arguments in turn.

### I.   Active Pursuit

Although evidence obtained from an illegal search is ordinarily inadmissible under the exclusionary rule, this rule "has been tempered with exceptions that apply where the deterrence rationale has little basis." United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007). Under one of these exceptions—the inevitable discovery exception—"if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible." Id. (citing Nix v. Williams, 467 U.S. 431, 442–43, (1984)). The Eleventh Circuit "also requires the prosecution to show that 'the lawful means which made discovery inevitable were

5

being *actively pursued* prior to the occurrence of the illegal conduct.'" Id. (quoting Jefferson v. Fountain, 382 F.3d 1286, 1296 (11th Cir. 2004)). The Eleventh Circuit has made clear that "the purpose of the requirement of active pursuit is to exclude evidence that was not being sought in any fashion." United States v. Johnson, 777 F.3d 1270, 1275 (11th Cir. 2015).

The Magistrate Judge concluded Trooper Sikes was "actively pursuing lawful means" before he violated Defendant's Fourth Amendment rights under Rodriguez v. United States, 575 U.S. 348 (2015), because Trooper Sikes was asking Defendant about the car's ownership and stated he was going to obtain the rental agreement. Dkt. No. 158 at 39-40. Defendant, however, argues "Trooper Sikes was not actively—much less diligently—pursuing the traffic violation" and instead was "actively *not* pursuing the traffic violation when he elected to ask the impermissible questions." Dkt. No. 169 at 18 (emphasis in original).

Defendant's argument conflates Trooper Sikes's pre-Rodriguez violation actions—i.e., his questioning about the rental agreement and stating his intention to obtain it—with his Rodriguez-violative actions themselves—i.e., his impermissible questioning. According to Defendant, *because* Trooper Sikes asked impermissible questions, he was not actively pursuing the traffic violation. Such an analysis would render the active pursuit requirement meaningless; it would require that whenever a Fourth Amendment

6

violation occurs, the officer was *never* engaged in active pursuit prior to the violation. The active pursuit requirement of the inevitable discovery exception exists to address those exact situations: where a police officer is actively pursuing a violation, commits a constitutional violation, and then obtains evidence. See, e.g., United States v. Satterfield, 743 F.2d 827, 846 (11th Cir. 1984) ("[I]f evidence is obtained by illegal conduct, the illegality can be cured only if the police possessed and were pursuing a lawful means of discovery at the time the illegality occurred."), superseded by statute on other grounds as stated in United States v. Edwards, 728 F.3d 1286, 1292 n.2 (11th Cir. 2013). "'Subtract the [illegal search] from the factual picture in this case' and 'nothing of substance' would have changed." Johnson, 777 F.3d at 1274 (quoting Jefferson, 382 F.3d at 1297). Such are the cases where the inevitable discovery exception applies.

If Defendant were correct, and if Trooper Sikes's Rodriguez violation required exclusion of the evidence later seized, then the "active pursuit" requirement "would not return the government to the same position it 'would have been in [without the violation]' . . . because [Trooper Sikes] would have discovered the [evidence] in the course of his ordinary investigation into the ownership of the [vehicle]." Id. (quoting Nix, 467 U.S. at 443). That Trooper Sikes violated Rodriguez is the *reason* we

7

examine whether an exception to the exclusionary rule applies at all; the violation itself cannot *also* defeat the applicability of the exception. The Magistrate Judge was correct in that Trooper Sikes was actively pursuing the traffic violation prior to his Rodriguez violations, and this requirement of the inevitable discovery doctrine is satisfied.

**II.   "Something More"**

Defendant next argues that "[i]nevitable discovery cases suggest that there [must be] something more than the illegal search itself," such as "an inventory search," a "search party," or "ongoing investigations," for the exception to apply. Dkt. No. 169 at 20, 22. Defendant contends "[t]he rule is not, and should not be, that the exception applies if contraband would have been inevitably discovered if the officer simply resumed the unconstitutional stop." Id. at 20.

It is true that "[t]he Government cannot later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable." Satterfield, 743 F.2d at 846. However, Defendant's argument ignores the fact Trooper Sikes was, in fact, "pursuing a lawful means of discovery at the time the illegality occurred." Id. The case law does not require, nor does it suggest, that the lawful means of discovery must have been a certain *type* of lawful means— like an inventory search or search party. Defendant seems to

8

encourage this Court to limit the inevitable discovery exception only to those "lawful means" that have been enumerated by prior cases. The Court sees no such occasion to do so; one lawful means is no better than another for the purposes of the inevitable discovery exception.

Whether the subsequent Rodriguez violation occurred or not, Trooper Sikes was going to approach the passenger door and smell marijuana. His prior questioning and announcement of his intent to retrieve the rental agreement was inevitably going to lead him to the marijuana odor, and the disputed evidence therefore would have been inevitably discovered. Defendant's contention that "nothing signal[ed] an inevitable discovery," dkt. no. 169 at 22, ignores that fact, and the Magistrate Judge did not err in this respect.

### III. Purpose Analysis

Finally, Defendant argues the Magistrate Judge's analysis of the purpose of the inevitable discovery exception "would render every search constitutional—which cannot be." Id. at 23. Specifically, Defendant contends the Magistrate Judge's analysis "simply . . . excise[s] unconstitutional conduct from the equation of any search," which would entail that "no evidence would ever be suppressed." Id.[1]

---

[1] Specifically, Defendant refers to the Report and Recommendation's analysis as follows:

The Magistrate Judge's analysis does no such thing. The analysis to which Defendant refers is the Magistrate Judge's demonstration that the facts of this case fulfill the exception's purpose to "put the police in the same, not a worse position they would have been in if no police error or misconduct had occurred." Id. (quoting Dkt. No. 158 at 45). Isolating this portion of the Report, without taking into account the rest of the Report which analyzes the further requirements of the inevitable discovery exception (i.e., active pursuit and reasonable probability) is a straw man argument and does not undercut the propriety of the Magistrate Judge's conclusion.

Accordingly, Defendant's Objections to the Magistrate Judge's recommendation that the Court apply the inevitable discovery exception to the exclusionary doctrine are **OVERRULED**.

## CONCLUSION

After an independent and de novo review of the entire record, the Court **CONCURS** with the Magistrate Judge's Report and

---

The R&R stated that the inevitable discovery exception is "intended to put police in the same, not a worse[,] position they would have been in if no police error or misconduct had occurred." . . . Thus, if Trooper Sikes had "done everything right, making no mistakes and complying fully with the Fourth Amendment, he would have stopped [Henderson] as he did, he would have approached the passenger side of the car to retrieve the rental agreement just as he did, he would have detected marijuana just as he did, and the evidence would have been discovered and seized just as it was." . . . The "only difference," according to the R&R, "would have been the impermissible questioning; Trooper Sikes would not have spent about 65 seconds asking [Henderson] questions unrelated to speeding."

Dkt. No. 169 at 23 (quoting Dkt. No. 158 at 45).

10

Recommendation, dkt. no. 158, **ADOPTS** the Report and Recommendation as the opinion of the Court, and **OVERRULES** Defendant's Objections, dkt. no. 169.

**SO ORDERED,** this 19th day of July, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA